STATE v. J. N. TUCKER.

[59 South. 827.]

1. INDICTMENT. *Language of statute. Code 1906, section 1334.. Constitutional law. Police powers. Practice of medicine.*

An indictment charging that defendant "did unlawfully practice as a physician and did not then and there have a license so to do," is a sufficient compliance with section 1334, Code 1906, prohibiting the practice of professions without license, although the words of the statute, "without having first been examined and obtained a license as required by law" are not set out in the indictment.

2. CONSTITUTION UNITED STATES, FOURTEENTH AMENDMENT. *Police power. Code 1906, section 1334.*

Code 1906, sections 1334 and 3691 regulating the practice of medicine, prescribing how license for engaging in that profession may be obtained, defining what is the practice of medicine and providing penalties therefor, is within the police powers which may be lawfully exercised by the state and is not in violation of the fourteenth amendment of the Constitution of the United States.

APPEAL from the circuit court of Lauderdale county. HON. JNO. L. BUCKLEY, Judge.

From a demurrer sustaining an indictment against J. N. Tucker, the state appeals.

The facts are fully stated in the opinion of the court.

W. W. VENABLE, distrct attorney, for the state.

1st: Is the indictment insufficient in that it fails to state that the defendant had not been examined?

2nd: Are the sections of the Code upon which the indictment is founded, unconstitutional?

It is primary learning that by his demurrer the defendant admits as true every material allegation of the indictment. This being true, the defendant admits that (a) he recommends, suggests, prescribes and directs drugs, medicines, appliances, etc. for the cure and palliation of the ailments and diseases of people, (b) that he received money therefor and (c) that he has no license so to do. The defendant contends that such conduct on his part is not violative of the law. To my mind the mere statement of the proposition is its refutation, but since it appears to have received some consideration by the learned court below, and was urged with earnestness by able counsel for defendant, we ask the indulgence of the court while we state, as briefly as we can, the reasons why we believe that such a position is untenable.

In the first place, such a position is untenable because it is contrary to the language of the statute. The statute (Sec. 1334) says: "If any person shall practice," etc., "without first having been examined and obtained a license," etc. It plainly appears from the language of this section that every person is prohibited from practicing without first having done two things, that is, been examined and obtained a license in the manner fixed by law. The burden is upon the one desiring to practice to qualify under the law by compliance with the conditions specified. These are two in number. Both are necessary. They are stated and the statute clearly says that every one is prohibited until he shall first be examined and obtain license. He must do both. Compliance with one is not enough. *Ita lex scripta est.*

It was considered that the public good demanded that those who undertook to administer drugs of dangerous character and apply the materials of *materia medica* to the cure of human ills should have a certain prescribed amount of knowledge and training. The various statutes designed to effectuate this intent are as follows:

Sec. 3681, Code 1906: This section requires that every one who desires to practice medicine must obtain a license so to do from the state board of health.

Sec. 3681, Code 1906: Under this, it is required that every person who desired to obtain a license to practice medicine must apply therefor in writing, etc . . . and if the applicant be found to possess sufficient learning in the stated branches of medical learning and be of good moral character, the board shall at once issue to him a license, etc.

Sec. 3683, Code 1906: This requires that among other things that the applicant for license shall give reference to the board as to his personal character.

Sec. 218, Code 1906: This section states that any person convicted of felony, manslaughter excepted, shall be incapable of obtaining a license to practice law, if already licensed, the court in which he shall have been convicted shall enter an order disbarring him. (It is made an offense to practice law without license in the same section in which the practice of medicine without license is penalized.)

Sec. 1528, Code 1906: This declares that persons convicted of certain felonies shall not be allowed to practice medicine.

Under the section we are considering, the practice of law and medicine is regulated alike and it will be noticed that a lawyer convicted of certain felonies is disbarred and his license revoked and yet this class of men who had once been examined and obtained license, could continue to practice their professions since the state could never prove that they had not been examined.

The legislative purpose is clear in these various sections and since section 1334 is the only one penalizing persons who do not bring themselves within the requirements of the statutory scheme and legislative purpose, the construction contended for by defendant means the overthrow of every section and the absolute defeat and

destruction of the legislative safeguards thrown aroud the public.

The defendant next attacks the indictment on the ground that section 3691 of the Code is unconstitutional in that it deprives him, if enforced, of the equal protection of the laws; takes his property without due process of law and is vicious class legislation in favor of what is known as medical men. It is well settled that the fourteenth amendment to the Constitution of the United States does not limit the subjects upon which the police power of the state may be lawfully exercised. *Jones* v. *Brim,* 165 U. S. 180, 41 Law Ed. 677; *Nugler* v. *Kansas,* 123 U. S. 623, 31 L. Ed. 205; *In re Kemler,* 136 U. S. 436, 34 Law Ed. 519; *Walker* v. *Penn,* 127 U. S. 699, 32 Law Ed. 261; *Powell* v. *Penn,* 127 U. S. 678, 32 Law Ed. 253.

It is undoubted that the states have the right, pursuant to the power of policies retained by them, to regulate certain pursuits and professions.

"The right to practice law in the state courts is not a privilege or immunity of a citizen of the United States within the meaning of the fourteenth amendment. The power of a state to prescribe qualifications for admission to the bar is unaffected by that amendment." *Bradwell* v. *Illinois,* 16 Wall. 130, 21 Law Ed. 442.

"A state statute making it a misdemeanor punishable by fine or imprisonment to practice medicine without a certificate from the state board of health that the practitioner is a graduate of a reputable medical college is not unconstitutional as depriving him of life, liberty or property without due process of law." *Dent* v. *West Virginia,* 129 U. S. 114, 32 Law Ed. 623.

"Regulations respecting the pursuit of a lawful trade or business, being an exercise of the police power, are within the authority of the state and form no subject for federal interference, unless they are so utterly unreasonable and extravagant in their nature and purpose that the property and personal rights of the citizen are un-

necessarily and in a manner wholly arbitrarily inter-fered with or destroyed without due process of law." *Gundling* v. *Chicago,* 177 U. S. 183, 44 Law Ed. 725.

"Special legislation is not obnoxious to the last clause of the fourteenth amendment of U. S. Constitution if all persons subject to it are treated alike." *Missouri, etc.,* v. *Mackey,* 127 U. S. 205, 32 Law Ed. 107; *Dncan* v. *Missouri,* 152 U. S. 377, 38 Law Ed. 485, and providing also that the classification is based upon some reasonable ground having some reasonable relationship to the ac-complishment of the objects of police sought to be at-tained, not being a mere arbitrary selection. *Gulf, etc.,* v. *Ellis,* 165 U. S. 150, 41 Law Ed. 666.

*S. L. Dodd and H. T. Leonard,* for appellee.

The indictment is predicated and based upon Sec. 1334 of the Code, and to constitute the offense, it should conform to that section, and the indictment in this in-stance does not charge that the appellee practiced medi-cine, "without having first been examined and obtained a license as required by law."

The failure of the state to allege this in its indictment is fatal, and to say that he did unlawfully practice as a physician, is not sufficient, because it should allege and put him on notice of every averment, necessary to con-stitute the offense. It is not even contended that the in-dictment conforms to the statute in this case, and as the statute is the source of power and confers the right to proceed against the appellee, if at all, it should have expressly charged those things that the statute defines as a condition precedent to the practice of medicine, and that he did not comply with the same.

A careful inspection of the law involved in the con-sideration of this case we find that Sec. 3691 defines the practice of medicine in Mississippi.

We further find that Sec. 1334 of the Code of 1906 points out and defines what constitutes the practicing

of medicine without license, and prescribes penalties for failing to comply with this provision. This section, we submit to the court makes it absolutely essential, and a condition precedent for an indictment to be based upon it that the same should charge that Dr. J. N. Tucker did practice as a physician or surgeon without having first been examined, and obtained a license as required by law.

It takes this to be alleged in the indictment to constitute a violation of law. That phraseology would never have been written into the law, unless it was intended to mean exactly what it says, and the indictment should negative and allege that the appellee did not conform to the law and more, should have expressly charged that he had never been examined and never obtained a license as required by law, and the failure of the state to allege this very material matter in its indictment renders it fatal, vicious, charges no offense known to law, and is one of the hubs in the case on which the action of the lower court was manifestly founded.

It is one of the well-recognized rules of construction that courts will not engraft upon a statute what the plain letter of the law does not contain, nor will it require or permit the pleader to do less than what the statute says shall constitute the offense.

1 Bishop on Criminal Procedure (2 Ed.), under the caption of "Substantial Averments in the Indictment" uses the following language:

"If a statute in describing the offense which it creates, uses the word, the indictment founded on the act will be bad if it be omitted; and it is in general, best to resort to it, especially as it precludes all legal cause, or excuse for the crime."

Now measuring the indictment by this rule, and as the state elected not to follow words constituting the offense we think it failed, it was error in the indictment not to base it upon Sec. 1334, Code of 1906.

For this reason and others, apparent upon reading the indictment, it charges no offense known to law, and the demurrer was properly sustained by the learned trial court.

We submit further that the contention of the able district attorney that under Sec. 1528 of the Code, persons convicted of certain felonies are prohibited from practicing medicine, yet a doctor, who had once been examined and licensed could cheerfully continue the practice after conviction of these felonies, because the state could not prove that he had never been examined, is without merit, far-fetched, and a strained construction of the law, and has not the remotest application to the case at bar.

And while to a reasonable extent the police power of the state extends to the protection of lives, comforts and quiet of all persons to the protection of all within the state to a reasonable extent we submit to the court for its consideration the fifth ground of demurrer interposed by the appellee, which permits women to practice medicine without having obtained a license, while men are restricted from enjoying the same privilege, and therefore class legislation, and a limitation on the organic law of the land. Just here we call attention of the court to the opinion of Mr. Justice FIELD of the Supreme Court of the United States in the 129 U. S. 624, in case of *Frank M. Dent*, Plaintiff in Error versus *the State of West Virginia*, that the district attorney in this case was so unfortunate as to refer to in his admirable brief, the language of the court is this:

"It is undoubtedly the right of every citizen of the United States to follow any lawful calling, business or profession he may choose subject only to such restrictions as are imposed upon all persons of like age, sex and condition. . . . Here all vocations are open to every one on like conditions."

Now Sec. 3691, which attempts to define the practice of medicine has this exception: "providing that nothing

in this section shall apply to females engaged solely in the practice of midwifery.''

That provision of the section of the Code, however ungallant it may appear to us to challenge is in the teeth of the opinion above referred to.

As to the constitutionality of the act in question, we wish to further call the attention of the court to section 3691, which attempts to define the practice of medicine, which in part reads as follows:

''The practice of medicine shall mean to suggest . . . midwifery, after having received, or with the intent of receiving therefor, either directly or indirectly any bonus, gift, profit or compensation, etc.''

Now from a thorough reading of this section above cited, it is evident to the reader that it is made a condition precedent to the practice of medicine within the meaning of the statute to receive, or with the intent of receiving therefor. . . any bonus, gift, profit or compensation. In other words, unless such profit, gift or compensation are intended to be received it does not constitute the practice of medicine within the meaning of the statute. Dr. Tucker under this statute, as we take it, might do charity practice all his days and not receive any fee or compensation, and not violate the statute.

This we insist is class legislation, unjust, harsh and discriminatory, and deprives citizens of the fruits of their labor.

''Although a law is fair and impartial on its face, and in its appearance, yet, if it is applied and administered with an evil eye and unequal hand, so as to make unjust and illegal discrimination; it is within the prohibition of the Federal Constitution.'' *Chy Lung* v. *Freeman,* 92 U. S. 275; *Louisville & N. R. R. Co.* v. *Kentucky,* 161 U. S. 677.

In the case of *McAden* v. *Jenkins,* 64 N. C. 801, and reaffirmed in *Raleigh & S. Air-line R. Co.* v. *Jenkins,* 66 B. C. 505, the court says:

"Railroad charters are drafted by promoters, and hence should be construed most strongly against the grantees and in the interest of the public. Though there may be no promoters here, the same rule applies to this act amending the charter of this corporation, in whose supposed interest it was evidently drafted, and not solely in the interest of the public. Under the guise of construction of those well-understood terms, "the practice of medicine and surgery," the act essays to provide that the practice of medicine and surgery, shall be construed to mean the management "for fee or reward" of any case of disease, physical or mental, real or imaginary, with or without drugs, surgical operation, surgical or mechanical application, or by any other method whatsoever.

It may be that this section of the statute, 3691, was not intended to specially protect this favored class in the charging and collecting of their fees, but it certainly does strike us that they are the only ones who can charge and collect for their services.

In the case of *Soon Hing* v. *Crowley,* 113 U. S. 703, the court states as follows:

"The discriminations which are open to objection are those where persons engaged in the same business are subject to diffrent restrictions, or are held entitled to different provileges under the same conditions. It is only then that the discrimination can be said to impair the right which all can claim in the enforcement of the law."

"It is not within the power of the legislature, under the pretense of exercising police power of the state, to enact laws, not necessary to the preservation of the health and safety of the community, that will be oppressive and burdensome upon the citizens." *Toledo W. & W. R. Co.* v. *Jacksonville,* 67 Ill. 440.

"This law will not allow the rights of property to be invaded under the guise of a police regulation for the

promotion of health, when it is manifest that such are not the object and purpose of the regulation.'' *Austin* v. *Murray,* 16 Pick. 121; *Watertown* v. *Mayo,* 109 Mass. 315 and 319.

*Cochran & McCants,* for appellee.

Offenses created by statute as well as offenses at common law, must be accurately and clearly described in the indictment; and if they cannot be in any case without an allegation that the accused is not within the exception contained in the statute defining the offense, it is clear that no indictment founded upon the statute can be a good one which does not contain such an allegation, as it is usually true that no indictment is sufficient if it does not accurately and clearly allege all the ingredients of which the offense is composed.'' *Rex* v. *Mason,* 2 T. R. 581.

''With rare exceptions, offenses consist of more than one ingredient, and in some cases of many; and the rule is universal that every ingredient of which the offense is composed must be accurately and clearly alleged in the indictment.'' Archibald Crim. Plead. Cases, 15 Ed. 54.

The indictment is based on section 1334 and section 3691 of the Code; and an attempt was made to embody the language of both sections in the indictment, but it did not follow or embrace the language of either section. This is perfectly manifest by even a casual reading of the indictment.

''Indictments on statutes must state all the circumstances which constitute the definition of the offense, and the act; they must pursue the precise technical language employed in the statute defining the offense.'' *Ainesworth* v. *State,* 5 Howard, 242; *Anthony* v. *State,* 13 S. & M. 263; *Ike* v. *State,* 23 Miss. 525.

. ''Where the words of the statute are descriptive of the offense, the indictment should follow the language

and expressly charge the described offense of the defendant, or it will be defective." *Dee* v. *State,* 603.

The failure of the indictment to negative the clause "without having first been examined and obtained license as required by law" makes the indictment bad. The district attorney makes an ingenious effort to escape this objection by contending that the prohibition in section 1334 is general and is not therefore necessary to negative that clause. We submit that his contention is not sound, but if we are mistaken, then we say that both sections must be read in connection and that the indictment should have negatived the exception in section 3691 in reference to the practice of midwifery. The fact that the subject-matter of a negative averment lies peculiarly within the knowledge of the defendant only goes to the point that it will be taken as true unless disproven by the defendant. *State* v. *Lipscomb,* 52 Mo. 32; *State* v. *McGlynn,* 34 N. H. 422; *Wiley* v. *State,* 52 Ind. 516; *Hinckley* v. *Penobscott,* 42 M. E. 90.

"But the exception must nevertheless be alleged and an omission in this regard will not be cured by the statute of jeofails because that statute is intended to apply only to immaterial averments and this averment is material, although the burden of proof here is on the defendant." *State* v. *Meek,* 7 Mo. 357.

The indictment is not good under either section of the statute. The demurrer challenges a construction and validity of the statutes; section 3691 is clearly unconstitutional and void.

The state justifies section 3691 as a legitimate exercise of the police power of the state to protect the public health. We deny that it is such an exercise of the police power, because it creates a monopoly in favor of the M. D.'s and is violative of the fourteenth amendment to the Constitution of the United States.

We say that the classification of section 3691 contains strong, intrinsic evidence that its real purpose was not

to protect the public health but was to subserve the interests of the alapaths. It virtually prohibits many perfectly harmless methods and systems for healing or relieving human suffering and if harmless, the legislature has no power to prohibit them. A statute enacted in exercise of the police power must be a police regulation in fact. If it does not conduce to any legitimate police purpose or if it amounts to an arbitrary and unwarranted interference with the rights of a citizen to pursue any lawful and legitimate business, the courts have a right and it is their duty to declare the statute unconstitutional. *Booth* v. *People,* 78 Am. St. Rep. 237, 238.

"The police power, however, cannot be made an excuse for oppressive and unjust legislation; *Harbison* v. *Knoxville Iron Co.,* 103 Tenn. 421, 76 Am. St. Rep. 782; *State* v. *Broadbelt,* 89 Md. 565, 73 Am. St. Rep. 201; *Ex parte Brown,* 38 Tex. Cr. Rep. 295, 70 Am. St. Rep. 743. Laws enacted in the exercise of the police power must be police regulations in fact, and if they do not conduce to any legitimate police purpose, but amount to an arbitrary and unwarranted interference with the right of the citizen to pursue any lawful business, they must be declared unconstitutional; *State* v. *Chicago, etc. Ry. Co.,* 68 Minn. 381, 64 Am. St. Rep. 482; for the police power, however broad and extensive, is not above the Constitution, and must be exercised in subordinancy to it; *State* v. *Goodwill,* 33 W. Va. 179, 25 Am. St. Rep. 863; *Stehmeyer* v. *City Council,* 53 S. C. 259. Constitutional rights cannot be abridged by legislation under the guise of police regulation. *State* v. *Julow,* 129 Mo. 163, 50 Am. St. Rep. 443; *Ruhstrat* v. *People,* 185 Ill. 133, 76 Am. St. Rep. 30. The legislature is the judge of when the necessity for an exercise of the police power exists, but the reasonableness of its exercise is a question for the courts. In other words it belongs to the legislature to exercise the police power of the state subject to the

power of the courts to adjudge whether any particular law invades rights secured by the Constitution. *Cleveland, etc. Ry. Co. v. People,* 175 Ill. 359, 367; *Ruhstrat v. People,* 185 Ill. 133, 76 Am. St. Rep. 30; *Mugler* v. *Kansas,* 123 U. S. 623, 661; *Colon* v. *Lisk,* 153 N. W. 188, 60 Am. St. Rep. 609. In order to sustain legislative interference with the business of a citizen by virtue of the police power, either under a statute of a municipal ordinance, it is necessary that the act should have some reasonable relation to the subjects included in such power. It must tend in some degree toward the prevention of offenses, or preservation of the public health, morals, safety, or welfare; and where a statute is sought to be upheld as a proper exercise of the police power, the court should examine it for the purpose of ascertaining whether the health, morals, safety or welfare of the public justifies its enactment. If the statute has no real or substantial relation to those subjects it is the duty of the court to so adjudge. *Chicago* v. *Netcher,* 183 Ill. 104, 75 Am. St. Rep. 93; *People* v. *Warden,* 157 N. Y. 116, 68 Am. St. Rep. 763; *Ex parte Brown,* 38 Tex. Cr. Rep. 295, 70 Am. St. Rep. 743; *People* v. *Havnor,* 149 N. Y. 195, 200, 52 Am. St. Rep. 707."

And in *Block and Griff* v. *Schwartz,* 101 Am. St. Rep. 979-980, the court said:

"In *Butchers Union Co.* v. *Crescent City Co.,* 11 U. S. 746, 4 Sup. Ct. Rep. 652, 28 L. Ed. 585, Mr. Justice FIELDS, speaking of constitutional rights, said: 'Among these inalienable rights, as proclaimed in that great document is the right of men to pursue their happiness, by which is meant the right to pursue any lawful business or vocation in any manner not inconsistent with equal rights of others, which may increase their prosperity or develop their faculties, so as to give to them their highest enjoyment. The common business and callings of life, the ordinary trades and pursuits, which are innocuous in themselves, have been followed in all com-

munities from time immemorial, must therefore be free in this country to all alike upon the same conditions. The rights to pursue them without let or hindrance, except that which is applied to all persons of the same age, sex and condition, is a distinguishing privilege of citizens of the United States, and an essential element of that freedom which they claim as their birthright.' *Application of Jacobs,* 98 N. Y. 98, 50 Am. Rep. 636; *City of Clinton* v. *Phillips,* 58 Ill. 102, 11 Am. Rep. 52; *State* v. *Julow,* 129 Mo. 163, 50 Am. St. Rep. 443, 31 S. W. 781, 29 L. R. A. 257; *Millet* v. *People,* 117 Ill. 294, 57 Am. Rep. 869, 7 N. E. 631; *Warley* v. *Kennedy,* 2 Yerg. 544, 24 Am. Dec. 511; *People* v. *Marks,* 99 N. Y. 377, 52 Am. Rep. 34, 2 N. E. 29; *Yick Wo* v. *Hopkins,* 118 U. S. 356, 6 Sup. St. Rep. 1064, 30 L. Ed. 220.''

REED, J., delivered the opinion of the court.

The indictment in this case is under section 1334 of the Code of 1906, prohibiting the practice of professions without license, and prescribing a penalty therefor. Dr. J. N. Tucker was indicted for practicing as a physician without a license as required by law. It is claimed that the indictment is not sufficient, because it fails to contain the following words of the statute: "Without having first been examined and obtained a license as required by law." The indictment charged that he "did unlawfully practice as a physician . . . and did not then and there have a license so to do." This is a sufficient statement of the offense for the trial of the party charged. A license would not be issued to a person without the examination required by law. It would be a sufficient defense for a person charged to show that he had a license. Section 1334 is a part of the state's statutes, enacted in the plan to regulate the practice of medicine.

The other point raised in the demurrer to the indictment is that the sections of the Code of 1906 (1334 and

3691) and the scheme proposed by said sections are prohibited by the fourteenth amendment to the Constitution of the United States, which provides that no state shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States; nor deprive any person of life, liberty, or property without due process of law, nor deny to any person within the jurisdiction the equal protection of the law. The laws of this state regulating the practice of medicine, prescribing how license for engaging in that profession may be obtained, defining what is the practice of medicine, and providing penalties therefor, is within the police powers which may be lawfully exercised by this state. Certainly the state has a right to make proper and reasonable regulations for certain pursuits and professions. The purpose of the law is to protect the public, and to require all persons who may offer to engage in the practice of medicine to properly prepare themselves for such work, and to answer to the state by examinations as to whether such preparation has been sufficient. The regulations as contained in the laws of this state are certainly not unreasonable; and, as shown by the very wording of the statute, every person is given an opportunity to comply with them and enter into the practice of medicine.

In this case, and as now presented, it is only necessary to decide as to whether there has been a proper presentment of the defendant for trial. No question as to what school of medicine the defendant is practicing in, nor the manner of his practice, is for consideration. The trial judge erred in sustaining the demurrer.

*Reversed.*