HARRIS *v*. STATE

No. 40298 January 14, 1957 92 So. 2d 217

758

*Prewitt & Bullard,* Vicksburg, for appellant.

*John H. Price, Jr., Asst. Atty. Gen.,* Jackson, for appellee.

HOLMESS, J.

Two affidavits were lodged against the appellant in the County Court of Warren County, each charging him with the practice of medicine without a license.

One affidavit charged that he "did wilfully and unlawfully practice as a physician, towit, did wilfully and unlawfully attempt to diagnose an alleged illness of Emma Lee White, a human being, for profit and compensation and did wilfully and unlawfully suggest, recommend, prescribe and direct for the use of the said Emma Lee White certain drugs, medicine, or other substance, the exact nature and description of which is to the affiant unknown, by injection thereof into the body of the said Emma Lee White for alleged palliation of bodily infirmity of the said Emma Lee White, and to relieve a purported threatened miscarriage of the said Emma Lee White, with the intent of him, the said Roland K. Harris, of receiving therefor profit and compensation, towit, the

sum of $11.00. . . . . which said compensation he did then and there receive when he, the said Roland K. Harris, had not first been examined and without having first obtained a license as required by law. . . .''

The other affidavit charged that the appellant ''did wilfully and unlawfully practice as a physician, towit, did wilfully and unlawfully suggest, recommend, prescribe and direct for the use of John Minor, a human being, certain drugs, medicine, or other substance the exact nature and description of which is to the affiant unknown, by injection of the same into the body of the said John Minor for the cure, relief, and palliation of a disease or ailment of the body commonly known as gonorrhea, with the intent of him, the said Roland K. Harris, of receiving therefor profit and compensation and for which alleged diagnosis and treatment, he, the said Roland K. Harris, did receive profit and compensation, towit, the sum of $10.00. . . . . When he. the said Roland K. Harris, had not first been examined and without having first obtained a license as required by law. . . . . ''

The two cases were tried together by agreement of the parties. The jury returned separate verdicts, finding the appellant guilty as charged on each of the affidavits. The appellant was sentenced by the court on each of the charges to pay a fine of $100 and costs and to serve 30 days in jail, the jail sentences being suspended during good behavior. On appeal to the circuit court, the judgment of the county court was affirmed, and the appellant appeals to this Court.

The prosecutions are based upon Sections 2332 and 8888 of the Mississippi Code of 1942.

Section 2332 makes it unlawful for any person to practice as a physician or surgeon without having first been examined and obtained a license as required by law.

Section 8888 provides in its pertinent parts as follows: "The practice of medicine shall mean to suggest, recommend, prescribe, or direct for the use of any person, any drug, medicine, appliance, or other agency, whether material or not material, for the cure, relief, or palliation of any ailment or disease of the mind or body, or for the cure or relief of any wound or fracture or other bodily injury or deformity, . . . . after having received, or with the intent of receiving therefor, either directly or indirectly, any bonus, gift, profit, or compensation. . . ."

The facts are not in substantial dispute except on the issue as to whether the appellant in his treatment of Emma Lee White administered by injection penicillin or vitamin.

The appellant is a Chiropractor, holding a diploma from the Los Angeles College of Chiropractic, Los Angeles, Califorinia. Chiropractic has been defined as "a drugless method of treating human ailments, chiefly by manipulation of the spinal column with the hands." 41 Am. Jur., Physicians and Surgeons, Sec. 2, p. 134, footnote 5. In March and April 1954, the appellant was engaged in the practice of chiropractic in the City of Vicksburg under a license issued to him by the City, and he there maintained an office and displayed on his office window the name, "Dr. Harris, Harris Health Clinic." He issued to the public what he called courtesy cards. On these cards he offered free to anyone desiring it a physical examination usually costing from $15 to $25. The card further set forth that the examination would include: "Ear, nose and throat, liver, heart and circulation, blood pressure, chest, lungs, stomach and intestines, women's diseases, bones and joints, men's diseases." The card further read as follows: "If you suffer from asthma, diabetes, arthritis, high blood pressure, kidney trouble, neuritis, colitis, or any other disease, we know you will wish to take advantage of this valu-

able limited offer. Dr. Harris offers this as a public service to the residents of this vicinity. Take advantage of it now. Bring this courtesy card with you. If you are not ill, give it to someone who is.''

The appellant admits that he was not licensed as a physician to practice medicine.

Emma Lee White testified that on April 21, 1954 she was pregnant and suffering from stomach ailments and a high fever; that she and her husband went to see a doctor of their choice in Vicksburg to consult him about her condition; that the doctor was not in and they started to return home when in passing the appellant's office they saw his name on his office window and thinking that he was a medical doctor, they concluded to consult him; that they returned home to deliver some packages which they were carrying, and then came back to the appellant's office; that on meeting the appellant in his office, they inquired of him if he treated colored people, and he said that he did; that Emma Lee White then told him of her complaints; that the doctor took her into his examining room and gave her a physical examination; that during the course of the examination, the appellant took a long piece of steel and put a piece of cotton on it and inserted it into her and then withdrew it and showed her some blood on it and told her that she was about four months pregnant and was threatening a miscarriage; that the appellant then popped her arms and popped her back and then gave her a shot which he told her was penicillin, administering the same in the hip by the use of a hypodermic needle; that the appellant then gave her some brown looking pills and told her to take them twice a day, and directed her to return the next day; that she returned on April 23, 1954, when the appellant gave her another injection of what he said was penicillin; that she paid appellant a total of $11 for his services.

The appellant testified that Emma Lee White came to him stating that she was going to have a baby and that she wanted a doctor that would be her family doctor who would take care of her and the baby when it came; that he told her that he did not deliver babies, but that he would give her an examination and take care of her in case she had to have any treatment up to the time of delivery; that he gave her a complete physical and pelvic examination; that he found that she was discharging blood and that she was threatening to abort or miscarry; that he put her on vitamin K to prevent any more blood discharging and administered vitamin B-Complex, which has a tendency to clot the blood; that he had adjusted her to help take the pressure off the nerves that go to the uterus; that she came back on April 23 and that he gave her another spinal adjustment.

John Minor testified that on or about March 29, 1954, he came to the appellant for treatment for gonorrhea, thinking the appellant was a medical doctor; that the appellant examined him and then gave him a hypodermic injection in the hip and told him to return the next day for another injection; that on the next day he returned and the appellant gave him another injection and gave him an enema; that he paid the appellant a total of $10 for his services.

The appellant testified that John Minor came to him complaining of gonorrhea and that he examined him and found no evidence of such disease, and assumed that his complaints were due to congestion of the pelvis; that he gave him an injection of B-Complex vitamins and suggested that he come back the next day for a colonic irrigation; that he did not treat Minor for gonorrhea but for congestion of the pelvis.

The appellant complains on this appeal that the affidavits were fatally defective in that they undertook to charge an offense broader than that authorized by the terms of the statute and that the appellant's demurrers

to the affidavits should have been sustained. The basis of this complaint is that the affidavits charged that the appellant "'did wilfully and unlawfully suggest, recommend, prescribe and direct . . . .certain drugs, medicine or other substance . . .,'" thus substituting the words "or other substance" for the words "or other agency" as used in the statute. We think this complaint is not well founded. We think the words used in the affidavit are no broader than the words "or other agency" as used in the statute, and that they are equivalent in meaning to the language of the statute. ██ ██ We have held that if the offense charged is certainly and substantially described in language equivalent in meaning to the language of the statute it is sufficient. State v. Snowden, 164 Miss. 613, 145 So. 622; Word v. State, 180 Miss. 883, 178 So. 821.

██ ██ Likewise, we find untenable the contention of the appellant in the case in which Emma Lee White was the patient that the affidavit was fatally defective in that it charged a wilful and unlawful attempt to diagnose an alleged illnes of Emma Lee White. This language in the affidavit was followed by language which substantially described the offense in terms equivalent to the terms of the statute, and this, in our opinion, was sufficient. State v. Snowden, supra; Word v. State, supra.

It is further contended by the appellant that the trial court erred in granting to the State the following instructions:

"The court instructs the jury that vitamins given by injection into the body of a human being by a hypodermic needle is a medicine or drug, and likewise that penicillin so given is a medicine or drug, and if you believe from all of the evidence in the case beyond a reasonable doubt, that the defendant recommended, directed, prescribed or suggested for the use of John Minor or Emma Lee White, for compensation, the use of vitamins or penicillin, by injection into the body for the

relief, cure or palliation of ailment or disease of the body, then it will be your sworn duty to find him guilty as charged in the affidavit.''

''The court instructs the jury that if you believe, from all of the evidence in this case, beyond a reasonable doubt, that the defendant, Roland K. Harris, prescribed the use of a hypodermic needle in treatment of John Minor or Emma Lee White, for human ailment or disease, and used such needle for injecting any substance or agency into the body of the said John Minor or Emma Lee White, for profit or compensation, then it is your sworn duty to find the defendant guilty as charged in the affidavit.''

It is argued by the appellant that the instructions complained of assume that the use of a hypodermic needle is of itself practicing medicine, and· that vitamin is a drug or medicine. The instructions do not assume that the use of a hypodermic needle is of itself practicing medicine. They do instruct the jury that if they believe from the evidence beyond a reasonable doubt that the appellant for compensation injected into the body of the patients by the use of a hypodermic needle vitamins or penicillin for the relief, cure, or palliation of ailment or disease of the body, then they were authorized to find the defendant guilty.

 The evidence is conflicting as to whether or not the injections given Emma Lee White were penicillin or vitamin. Emma Lee White testified that the appellant told her at the time that the injections were penicillin. The appellant denied this and testified that the injections were injections of vitamins. This conflict in the evidence created an issue for the jury and the jury resolved this issue against the appellant. Penicillin is defined in the American Illustrated Medical Dictionary, Dorland, 2d ed., 1951, as an antibiotic used in the treatment of infections. It must be conceded, therefore, that penicillin is either a drug or medicine, and the appel-

lant does not argue to the contrary. In view of the jury's finding that the substance administered by injection to Emma Lee White was penicillin, we are of the opinion that the instructions complained of were not harmful, insofar as the affidavit involving Emma Lee White is concerned.

■■■ The question is further presented as to whether the appellant's treatment of John Minor by the injection of vitamins under all of the facts and circumstances of the case brought him within the statutory definition of practicing medicine. In other words, whether in so treating John Minor by injecting vitamins, the appellant was for compensation suggesting, recommending, prescribing, or directing for the use of the patient a drug, medicine, appliance, or other agency for the cure, relief or palliation of any ailment or disease of the body of the patient. In determining this question, we adopt that interpretation of the statute which is most favorable to the appellant and apply the rule of ejusdem generis to the words "or other agency," and construe the words to mean other agency akin to or of like character with a drug or medicine. 41 Am. Jur., Physicians and Surgeons, Sec. 27, p. 157.

■■■ Assuming as true the testimony of the appellant that he prescribed and administered vitamins in order to correct a vitamin deficiency, it necessarily follows that he prescribed and administered vitamins as an agency akin to medicine to correct a disorder or ailment in the human body which interfered with normal animal growth and was likely to produce disease.

■■■ The word "medicine" is defined in 57 C. J. S., Medicine, p. 1042, as follows: ". . . in its ordinary sense, as applied to human ailments, it means something which is administered, either internally or externally, in the treatment of disease or the relief of sickness. In this sense the word 'medicine' is variously defined as a remedial agent; a remedy . . . . any substance or prepara-

tion used in treating disease; articles intended for use in the . . . . treatment or *prevention of disease* in man or other animals . . . . ██ ██ *The fact that the substance employed as a remedial agency may have value as a food, and a tendency to build up and restore wasted or diseased tissue, will not deprive it of its character as a 'medicine,' if it is administered and employed for that purpose."* (Emphasis ours)

In Johnston's New Universal Handbook and Dictionary, the word "vitamin" is defined as follows: "One of a class of obscure soluble substances present in living tissues and food, the absence of which interferes with the normal processes of animal growth or may produce disease."

██ ██ It thus appears that vitamin deficiency in the human body creates a disorder or ailment which interferes with the normal processes of animal growth and is likely to produce disease, and that in such cases vitamins are administered as a remedial agent to correct this condition and to build up and restore wasted or diseased tissues and to prevent disease. The appellant himself testified that he administered vitamins to the patients to correct a vitamin deficiency. It can hardly be gainsaid that a substance which is administered for the purpose of restoring vitamin deficiency and which has the effect of restoring wasted tissues is a remedial agent, and one for the prevention of disease, and, therefore, one akin in character to medicine and one within the statutory definition of practicing medicine. It must be conceded under the facts of this case that the hypodermic injections which the appellant prescribed and actually administered were for the cure, relief or palliation of the ailments of which the patients were complaining, and that the same were administered as a remedial agent for the correction of human disorders or human ailments. We are, therefore, of the opinion that under the facts of this case, the administration of vitamins, if such were admin-

istered by the appellant, was the administration of an agency or substance akin to medicine and that the appellant in so administering the same came within the statutory definition of practicing medicine. Hence, it is our conclusion that the trial court committed no error in granting to the State the instructions complained of.

The appellant relies upon the case of Hayden v. State, 81 Miss. 291. In that case, the defendant was an osteopath and was indicted for practicing as a physician without first having been examined and obtained a license to do so. The admitted facts in that case were that the defendant did not use any drug or medicine, but his treatment consisted of manipulating scientifically the limbs, muscles, ligaments and bones which were pressing on the nerves of the blood supply. It is readily observable, therefore, that the admitted facts of that case render it wholly inapplicable to the case at bar.

 The appellant further contends that to sustain the conviction in this case would be to so construe the statutes involved as to render the same in violation of the constitutional right of a citizen to liberty and the pursuit of happiness, and to constitute a restriction upon the right of private contract. We are unable to agree with this contention. The statutes here involved were enacted for the protection of the public. It is highly important that those who would undertake to treat human ailments and disease should meet a prescribed qualification before being granted a license to do so. Human ailments, and indeed human life, are being daily committed to the care of physicians and it is necessary for the protection and welfare of the public that those who undertake to treat human ailments and human disease should possess the requisite knowledge, skill and ability to engage in the practice of medicine. The power of the State in the exercise of its police power to regulate physicians and surgeons has long been recognized. 41 Am. Jur., Physicians and Surgeons, Sec. 7,

p. 137. Such power of regulation was long ago recognized by this Court in the case of State v. Tucker, 102 Miss. 517, 59 So. 827, wherein the Court said:

"The laws of this State regulating the practice of medicine, prescribing how license for engaging in that profession may be obtained, defining what is the practice of medicine, and providing penalties therefor, is within the police powers which may be lawfully exercised by this State. Certainly the State has a right to make proper and reasonable regulations for certain pursuits and provisions. The purpose of the law is to protect the public, and to require all persons who may offer to engage in the practice of medicine to properly prepare themselves for such work, and to answer to the State by examination as to whether such preparation has been sufficient. The regulations as contained in the laws of this State are certainly not unreasonable; and, as shown by the very wording of the statute, every person is given an opportunity to comply with them and enter into the practice of medicine."

Considering the case as a whole and in view of the evidence adduced on the trial, we find no reversible error in the action of the trial court in granting to the State the instructions complained of, and we are of the opinion that under the facts of this case the appellant in his treatment of Emma Lee White and John Minor transcended the legitimate range of his practice as a chiropractor and invaded the field of the practice of medicine. We confine our decision to the facts of this particular case. We are cognizant of the fact that there are many chiropractors engaged in the practice of their profession in this State who pursue their profession within its legitimate range and who have the confidence and respect of the public in administering to human disorders and human ailments. After a careful review of the entire record in this case, however, we are of the opinion that the verdict of the jury is amply sustained by

the evidence and that the record discloses no reversible error. The judgments and sentences imposed by the court below on the charges in both affidavits are accordingly affirmed.

Affirmed.

*McGehee, C. J.,* and *Lee, Ethridge* and *Gillespie,* JJ., concur.