453 So.2d 92 (1984)
Wilhelm BERTENS, As Father and Next Friend, of Gasael Bertens, a Minor, Appellant,
v.
John STEWART, Superintendent of Schools, and the School Board of Polk County, Florida, Appellees.
No. 83-2472.
District Court of Appeal of Florida, Second District.
June 20, 1984.
*93 Charles R. Mayer of Mayer & Mayer, Highland City, for appellant.
C.A. Boswell, Jr., Bartow, for appellees.
SCHOONOVER, Judge.
The appellant, Wilhelm Bertens, as father and next friend of Gasael Bertens, a minor, seeks judicial review of final agency action of the appellee, School Board of Polk County, Florida. We reverse.
Upon learning that Gasael had delivered two "pills" to her classmates in the fifth grade at Southwest Elementary School in Lakeland, Florida, the principal suspended her and recommended that she be placed in the Elementary Alternative Program. His decision was upheld by the superintendent's Discipline Hearing Committee.
At a subsequent hearing before the school board's hearing officer, it was determined that Gasael had carried three ovalshaped, orange, nonprescription vitamin pills to school and had given two of them to her classmates. Based upon a phone call to a pharmacist, the hearing officer found that vitamin pills were medicine and that Gasael had violated the school board Code of Conduct because she had not brought the vitamins to the designated school staff member.
In his report, the hearing officer stated that society is well-informed of the drug problem that exists within the school system, and children must be protected against exposure to pills and capsules of a suspicious nature. His primary concern was not Gasael's possession of the "pills," but her distribution of them to her friends. The hearing officer's report concluded that the actions of the administration were proper. The school board approved the report and adopted it as their own. This timely petition for review followed.
We find that the school board's Code of Conduct is so vague that it fails to meet the due process requirements of article I, section 9 of the Florida Constitution and the Fourteenth Amendment to the United States Constitution.
We understand the appellee's concern about drug problems within our school system, but no matter how laudable a piece of legislation, or rule, may be in the minds of those who sponsor them, objective guidelines and standards must appear expressly in, or be within the realm of reasonable inference from, the language of the law or rule. The school board's effort to correct a purported evil is commendable, but when the means employed clash with our constitution, this court is compelled to follow organic law. Aztec Motel, Inc. v. State ex rel. Faircloth, 251 So.2d 849 (Fla. 1971).
The requirements of due process are not fulfilled unless the language of a penal statute is sufficiently definite to apprise those to whom it applies of the conduct it prohibits. It is constitutionally impermissible for a statute to contain such vague language that a person of common intelligence must speculate about its meaning and subject himself to punishment if his guess is wrong. State v. Wershow, 343 So.2d 605 (Fla. 1977). A vague statute is one that fails to give adequate notice of the conduct it prohibits and which, because of its imprecision, may also invite arbitrary and discriminatory enforcement. Southeastern Fisheries Assoc., Inc. v. Dept. of Natural Resources, State of Florida, 453 So.2d 1351 (Fla. 1984).
In the case sub judice, we are dealing with a noncriminal school board rule. While the test for vagueness is more lenient *94 for an administrative rule than for a penal statute, the requirement that a person of common intelligence be properly apprised of the conduct proscribed by the rule remains intact. City of St. Petersburg v. Pinellas Co. Police Benevolent Assoc., 414 So.2d 293 (Fla. 2d DCA 1982). Gasael Bertens was accused of violating the following portion of the school board's Code of Conduct:
Medication Required For The Welfare Of The Student.
Students are not allowed personal possession of a medicine while at school. All medicine (prescriptive or nonprescriptive) brought to school must be in an appropriately identified container and brought to the designated school staff member. Additionally, a note is required from a parent/guardian indicating the dosage and the time to be taken.
Consequences: May result in this infraction being treated as a drug or mood modifier violation.
The rule does not define medicine. A rule may satisfy due process requirements even though it contains general terms and lacks detailed specifications for the act or conduct proscribed; therefore, the school board's failure to define medicine does not, in and of itself, render the rule unconstitutionally vague. In the absence of a statutory definition, we may resort to case law or related statutory provisions that define the term. Where a statute does not define words of common usage, such words are construed according to their plain and ordinary meaning. State v. Hagen, 387 So.2d 943 (Fla. 1980).
Since none of the rules in the school board Code of Conduct specifically define medicine, we must consider its plain and ordinary meaning. Having done so, we conclude that the rule concerning medicine is so vague that it fails to give adequate notice of the prohibited conduct and is susceptible to arbitrary and discriminatory enforcement because of this imprecision.
THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 815 (new college ed. 1981) (AMERICAN HERITAGE DICTIONARY), defines "medicine" as an agent used to treat disease or injury. The Supreme Court of Arizona has accepted the definition of "medicine" as any substance or preparation used in treating disease. Stewart v. Robertson, 45 Ariz. 143, 40 P.2d 979 (1935). The test is whether the substance is administered or employed as a medicine. Stewart; Harris v. State, 229 Miss. 755, 92 So.2d 217 (1957); State v. Missouri Board of Chiropractic Examiners, 365 S.W.2d 773 (Mo. Ct. App. 1963).
The appellees, in their brief, stated the school board rule was adopted in accordance with a Florida Statute which requires school boards to adopt rules of procedure for the administration of medication in schools. The statute, however, addresses only the administration of prescription medicine. § 232.46, Fla. Stat. (1983). "Prescription" is defined as a written instruction by a physician for the preparation and administration of a medicine. AMERICAN HERITAGE DICTIONARY 1035. Had the Code of Conduct been limited to prescription medicine as directed by the legislature, the reference to medicine in the rule would have been more precise. If we were to hold that the Code of Conduct applies to every substance, whether prescribed or not, that can be or has been used at any time for medicine, there is practically no limit on the substances which would come within the Code of Conduct.
DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1534 (23rd ed. 1957), defines "vitamin" as a general term for a number of unrelated organic substances that occur in many foods in small amounts and are necessary for the normal metabolic functioning of the body. Vitamins are employed in many ways. When used by healthy people to supplement the diet, they are subject to regulation as foods. When marketed for the prevention or the treatment of disease, they are controlled as over-the-counter or prescriptive drugs. GOODMAN AND GILMAN'S THE PHARMACOLOGICAL BASIS OF THERAPEUTICS 151-58 (6th ed.) (GOODMAN). Vitamins *95 are medically prescribed in a variety of circumstances where vitamin deficiencies are present, such as inadequate intake of food, malabsorption, increased tissue needs, or inborn errors of metabolism; thus, if vitamins are used in large doses to treat a diagnosed dietary-deficiency disease, such as anorexia or alcoholism, they are medicine. GOODMAN.
A substance may therefore be a medicine under one set of circumstances and a nonmedicine under other circumstances. The test is whether the substance is administered or employed as a medicine. Stewart; Missouri Board; Harris. Just as, for example, water, salt, sugar, and honey are normally used as food and may at times be used for medicine, vitamins can also be used as either food supplements or medicine. In the case sub judice, there is no evidence that Gasael's vitamins were to be administered as a remedial agent to treat disease or injury. The fact that the vitamins were packaged in "pill" form did not change them from a vitamin into a medicine. Moreover, nothing in the Code of Conduct specifically proscribes conduct regarding the use of vitamins.
Students and parents should not be required to guess whether a food substance brought to school may violate the school board's Code of Conduct relating to medicine. If the school board desires to prohibit possession of "pills" or "vitamins," they should do so in a manner that may be understood by parents and students.
REVERSED and REMANDED.
SCHEB, A.C.J., and DANAHY, J., concur.