685 So.2d 886 (1996)
Paul R. PLANTE, D.V.M., Appellant,
v.
DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION, DIVISION OF PARI-MUTUEL WAGERING, Appellee.
Nos. 95-0837, 95-1096.
District Court of Appeal of Florida, Fourth District.
November 13, 1996.
Rehearing and Certification of Conflict Denied January 16, 1997.
Stephen T. Maher of Stephen T. Maher, P.A., Miami, for appellant.
Lisa S. Nelson, Deputy General Counsel, Tallahassee, for appellee.
KLEIN, Judge.
The appellant, Paul Plante, D.V.M., appeals from a final order of the Department of Business and Professional regulation suspending his Pari-Mutuel Wagering Occupational License and imposing a $2,000 fine. The agency found that Plante had violated *887 section 550.235(2), Florida Statutes (1993), and Florida Administrative Code Regulation 61D-1.002(18), which implemented section 550.235(2). Plante appeals arguing that the agency erred in finding these violations and in the penalty it ultimately imposed. We affirm in part, reverse in part.
Plante was a licensed veterinarian working at Pompano Harness track. He agreed to provide a "milkshake" to a horse which was administered a few hours prior to post time. A milkshake is a liquid formula containing roughly a 1/3 of a pound of sodium bicarbonate, sucrose, and water. While there is mixed scientific evidence as to its effectiveness in improving race times, a belief exists among some that the sodium bicarbonate prevents acid build up in the animal's muscles allowing for increased stamina and greater performance. The concoction was administered to the horse by means of a dose syringe. The horse receiving the milkshake did not win the race and actually ran two seconds slower than in his previous race in which he did not receive a milkshake. The Department suspended Plante's license finding he violated section 550.235(2).
Section 550.235(2) provides:
Any person who attempts to affect the outcome of a horserace or dograce through administration of medication or drugs to a race animal as prohibited by law; who administers any medication or drugs prohibited by law to a race animal for the purpose of affecting the outcome of a horserace or dograce; or who conspires to administer or to attempt to administer such medication or drugs is guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
Complementing section 550.235(2) is section 550.2415(9)(a) which reads:
Under no circumstances may any medication be administered within 24 hours before the officially scheduled post time of the race except as provided in this section.
Plante argues that sections 550.235(2) and 550.2415(9)(a), Florida Statutes (1993) are unconstitutionally vague in that they do not define the terms "medication" or "drugs". Plante argues that these statutes do not provide adequate warning that giving a horse water containing baking soda is illegal.
"The standard for testing vagueness under Florida law is whether the statute gives a person of ordinary intelligence fair notice of what constitutes forbidden conduct." Brown v. State, 629 So.2d 841, 842 (Fla.1994). In State v. Kahles, 644 So.2d 512 (Fla. 4th DCA 1994), approved, 657 So.2d 897 (Fla.1995), this court set out the analysis to be applied by a trial court when faced with a vagueness argument.
In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.
Kahles, 644 So.2d at 513 (footnotes omitted) (quoting Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982)).
Neither side argues that this case implicates any constitutionally protected conduct. Therefore, under the analysis set forth in Kahles, we next look to see if the enactment is impermissibly vague in all applications. We hold that it is not. It simply cannot be said that this statute fails to give a person of ordinary intelligence fair notice in all applications. For example, had the appellant been charged with administering amphetamines or narcotics to the horse, no person of ordinary intelligence could be heard to contend that they did not know these substances were "drugs" or "medication" within the meaning of the statute. Therefore, the *888 true issue to be resolved is whether the statute is unconstitutional as applied to the circumstances of this case.
It is well settled that in the absence of statutory definition, words of common usage are construed in their plain and ordinary sense. State v. Hagan, 387 So.2d 943 (Fla. 1980). "If necessary, the plain and ordinary meaning of the word can be ascertained by reference to a dictionary." Green v. State, 604 So.2d 471, 473 (Fla.1992). Webster's defines the word medication as "1: the act or process of medicating 2: a medicinal substance: MEDICAMENT," with the root word medicinal defined as "tending to or used to cure disease or relieve pain." Merriam Webster's Collegiate Dictionary, 722 (10th ed. 1993). Significantly, the definition of sodium bicarbonate, which is "a white crystalline weakly alkaline salt NaHCO3 used esp. in baking powders, fire extinguishers, and medicinecalled also baking soda, bicarbonate of soda," recognizes that sodium bicarbonate has medicinal properties. Webster's, at 1116.
As pointed out at the hearing by the Department, medical texts make clear that ordinary baking soda is a non-prescription drug. It is listed as such in medical publications including the Physician's Desk Reference for Nonprescription Drugs 648 (17th ed. 1996) and the 2 United States Pharmacopeial Dispensing Information, Advice for the Patient, Drug Information in Lay Language 1261 (14th ed. 1994). In fact, the Physician's Desk Reference states under "Dosage and Administration" that when used as a medication, it is to be mixed with water and ingested.[1]
While we are aware that baking soda also has many proper household uses, the circumstances of our case discount any non-medicinal purpose here. The 1/3 of a pound of sodium bicarbonate was mixed with water consistent with a medicinal use. The mixture was forced down the horse's throat by means of a dose syringe as the medical testimony was that no horse would voluntarily consume sodium bicarbonate in such massive quantities. This belies any argument that the baking soda was simply a recognized feed ingredient. Further, the solution administered was prepared by a veterinarian. Finally, the solution was administered on a one-time basis two hours before post time. In short, a person of ordinary intelligence would have known that the sodium bicarbonate solution administered was a drug or medication under the circumstances of this case.[2] "[C]ourts cannot require the legislature to draft laws with such specificity that the intent and purpose of the law may be easily avoided." Southeastern Fisheries Ass'n, v. Department of Natural Resources, 453 So.2d 1351, 1353 (Fla.1984); see, e.g., State v. Ashcraft, 378 So.2d 284 (Fla.1979) (term "excitative drug" upheld against constitutional challenge).
Plante also argues that the violations cannot stand because the Department failed to procure and test a race day sample. Section 550.2415(8)(d) provides that "[n]othing in this section shall be interpreted to prohibit *889 the use of vitamins, minerals, or naturally occurring substances so long as none exceeds the normal physiological concentration in a race day specimen." Plante's argument is not meritorious as Plante was found guilty of conspiring to affect the outcome of a race by administering drugs or medication. Conspiracy requires only an agreement between two or more people to commit a statutory violation. LaPolla v. State, 504 So.2d 1353 (Fla. 4th DCA 1987). Medical experts testified that the amount of sodium bicarbonate which Plante conspired to administer would have raised the physiological concentration of the substance beyond normal levels. Conspiracy does not require proof that the offense was successfully completed. State v. Brea, 545 So.2d 954 (Fla. 3d DCA 1989).
While we affirm the agency's finding of a statutory violation and the constitutionality of section 550.235(2), we reverse the agency's finding of a violation of rule 61D-1.002(18) as the Department concedes that the rule was previously found to be unconstitutional by this court. See Witmer v. Department of Business and Professional Reg., Div. of Pari-Mutuel Wagering, 662 So.2d 1299 (Fla. 4th DCA 1995). Accordingly, the penalty imposed upon Plante which was based upon a finding of violations of both section 550.235(2) and rule 61D-1.002(18) must also be reversed and remanded. In remanding for a new penalty to be imposed, we remind the agency that it must comply with the provisions of section 120.57(1)(b)(10) if it wishes to depart from the recommendation of the hearing officer.
We have considered the other issues raised and find them to be without merit. Affirmed in part, reversed in part and remanded.
STONE and PARIENTE, JJ., concur.
NOTES
[1] While it played no part in this decision, we would note that the State in a related case, State v. Giamanco, et al., 682 So.2d 1193 (Fla. 4th DCA 1996), submitted the label from a box of Arm & Hammer Baking Soda, the substance apparently used in our case. This label shows that an entire side of the box is devoted to baking soda's use as an antacid with dosage instructions, special warnings for children and the elderly, and a drug interaction statement. The label makes clear that for use as an antacid, the baking soda is to be mixed with water and ingested.
[2] In so holding, we are not unaware of Bertens v. Stewart, 453 So.2d 92 (Fla. 2d DCA 1984), which found the term "medicine" in a school code of conduct vague. There, a fifth grader had been suspended for delivering two vitamin tablets to friends. Bertens was decided prior to our decision in Kahles and made no distinction between facial vagueness and vagueness as applied. It is inconceivable that had the fifth grader arrived at school and distributed amphetamines or narcotics, he could have been heard to complain that a person of ordinary intelligence would not have known such substances constituted medicine. Further, we would note that the statutes at issue in our case cure the defect found in Bertens that people were required to guess if ordinary food substances could conceivably fall into the undefined term "medicine." Section 550.2415(8)(d) provides that "[n]othing in this section shall be interpreted to prohibit the use of vitamins, minerals, or naturally occurring substances so long as none exceeds the normal physiological concentration in a race day specimen."