Dear Ms. Dalton:
On behalf of the District Board of Commissioners of the Captiva Erosion Prevention District, you have asked for my opinion on two questions, one of which this office is authorized to address:[1]
Does the reference to a "subcounty special district," as that term is used in section 125.0104(3)(b), Florida Statutes, apply to both independent subcounty special districts and dependent subcounty special districts?
In sum:
The phrase "subcounty special district" is not defined for purposes of section 125.0104(3)(b), Florida Statutes, and would appear to refer to any special district that otherwise meets the requirements of the statute, that is, all or significant contiguity with the county, although applicability of the statute may be limited by other provisions of law.
Section 125.0104, Florida Statutes, known as the "Local Option Tourist Development Act"[2] (the act), authorizes a county to impose a tax on short-term rentals of living quarters or accommodations within the county unless such activities are exempt pursuant to Chapter 212, Florida Statutes.[3] The purpose and intent of section 125.0104, Florida Statutes, is to "provide for the advancement, generation, growth and promotion of tourism, the enhancement of the tourist industry, and the attraction of conventioneers and tourists from within and without the state to a particular area or county of the state."[4]
The act requires that construction of publicly owned facilities financed by proceeds from the tourist development tax be primarily related to the advancement and promotion of tourism. It is the governing body of the county that must make the factual determination of whether a particular facility or project is related to tourism and primarily promotes such a purpose. This determination must follow appropriate legislative findings and due consideration of the specific needs and conditions of the particular locality.[5]
Collections of the local option tourist development tax are forwarded to the Department of Revenue. The department administers the tax and keeps records of the amount of taxes collected.[6] The department is authorized to subtract the costs of administration of this tax from collections and must then return the tax, monthly, to the county which imposed the tax "for use by the county[.]" These funds must be placed in the tourist development trust fund of the county.
Subsection (3) of the act provides the legislative intent relating to the privileges taxed by the act, exemptions from the tax, procedures for the levy of the tax, and the rate at which the tax may be imposed and collected. Section 125.0104(3)(b), Florida Statutes, about which you have specifically asked, provides:
"Subject to the provisions of this section, any county in this state may levy and impose a tourist development tax on the exercise within its boundaries of the taxable privilege described in paragraph (a), except that there shall be no additional levy under this section in any cities or towns presently imposing a municipal resort tax as authorized under chapter 67-930, Laws of Florida, and this section shall not in any way affect the powers and existence of any tourist development authority created pursuant to chapter 67-930, Laws of Florida. No county authorized to levy a convention development tax pursuant to s. 212.0305, or to s. 8 of chapter 84-324, Laws of Florida, shall be allowed to levy more than the 2-percent tax authorized by this section. A county may elect to levy and impose the tourist development tax in a subcounty special district of the county. However, if a county so elects to levy and impose the tax on a subcounty special district basis, the district shall embrace all or a significant contiguous portion of the county, and the county shall assist the Department of Revenue in identifying the rental units subject to tax in the district."
Thus, this section provides counties with the discretion to levy and impose a tourist development tax in "a subcounty special district" of the county. If the county elects to levy such a tax, it may only do so in a special district that "embrace[s] all or a significant contiguous portion of the county[.]" No definition of the phrase "subcounty special district" is given in Chapter 125, Florida Statutes, nor is a definition provided elsewhere in the statutes where that term is used.[7]
In the absence of a statutory definition, the plain and ordinary meaning of words can be ascertained if necessary by reference to a dictionary.[8] While the term sub-county is not specifically defined, the prefix "sub-" is defined to mean "under," "below," "beneath," "slightly," "imperfectly," "nearly"[9] and, in another source: "a subordinate portion of" and "containing only a relatively small proportion or less than the normal amount of."[10] Using this model, a meaning for the word "sub-county" may be easily inferred by combining the meanings of "sub" and the attached base word "county" to mean a portion of the county; less than the entire jurisdictional area of the county. I would note that the term "contiguous" is defined as "[t]ouching at a point or along a boundary; adjoining[.]"[11] No comment is expressed on the factual determination of whether the district embraces all or a significant contiguous portion of the county.
This office like the courts, is not authorized to embellish legislative requirements with its own notions of what might be appropriate.[12] If additional requirements are to be imposed, they should be inserted by the Legislature.[13] Thus, this office cannot advise you that section 125.0104(3)(b), Florida Statutes, may be read to apply particularly to either a dependent or an independent special district. However, while this office cannot read into the statute limitations not directly expressed, other statutes, such as those describing the powers of independent and dependent special districts and their taxing powers may further limit the applicability of section 125.0104(3)(b), Florida Statutes.
Article VII, section 9(a) of the Florida Constitution provides that "[c]ounties . . . shall, and special districts may, be authorized by law to levy ad valorem taxes and may be authorized by general law to levy other taxes, for their respective purposes, except ad valorem taxes on intangible personal property and taxes prohibited by this constitution." Thus, the exercise of the power of taxation results from a constitutional authorization to counties and special districts, implemented by statute. Section 125.0104, Florida Statutes, does not extend the taxation authority to special districts such as the Captiva Erosion Prevention District; it authorizes the county to, in its discretion, levy and collect a local option tourist development tax to be deposited in the county's tourist development trust fund.
You have also brought to my attention Part II, Chapter 161, Florida Statutes. This part, dealing with beach and shore preservation districts authorizes such districts to provide for the capital, operation, and maintenance costs of the beach and shore preservation programs by either debt service or direct expenditure. However, my reading of this part indicates that such districts are controlled by the board of county commissioners which serves as the governing body for any such district.[14] The Captiva Erosion Prevention District was created as and continues to function as an independent special beach and shore preservation district with an independently elected district governing board.[15] The district possesses its own power to levy and assess ad valorem taxes not exceeding 10 mills on taxable property in the district to fund projects of the district.[16] In addition, the district board is authorized to issue bonds to meet the costs of capital projects "as may be required by the beach and shore preservation program" and levy special assessments on benefitted property to fund construction or reconstruction of an erosion prevention project.
In sum, it is my opinion, in the absence of any legislative definition of the term "subcounty special district," that the term as used in section 125.0104(3)(b), Florida Statutes, appears to refer to any special district that otherwise meets the requirements of the statute, that is, all or significant contiguity with the county, although applicability of the statute may be limited by other provisions of law.
Sincerely,
 Bill McCollum Attorney General
BM/tgh
[1] In addition to the question discussed herein, you ask for this office's opinion on the authority of a county to levy the local option tourist development tax under certain conditions. It is the policy of this office not to comment on the authority of one governmental agency at the request of another agency. Lee County was contacted by this office to determine whether the county would join in your opinion request and the county declined to do so. Therefore, no comment is expressed on your second question.
[2] Section 125.0104(1), Fla. Stat.
[3] See s. 125.0104(3)(a), Fla. Stat., stating it is the intent of the Legislature that every person who rents, leases, or lets living quarters or accommodations in "any hotel, apartment hotel, motel, resort motel, apartment, apartment motel, roominghouse, mobile home park, recreational vehicle park, condominium, or timeshare resort for a term of 6 months or less is exercising a privilege which is subject to taxation under this section. . . ."
[4] See Ops. Att'y Gen. Fla. 10-09 (2010), 95-71 (1995), 94-12 (1994), 87-16 (1987), and 83-18 (1983).
[5] See Op. Att'y Gen. Fla. 94-12 (1994) (governing body of the county must make determination that expenditure of tourist development tax revenues for the acquisition of a railway right-of-way and construction of a public recreational trail falls within the scope of expenditures authorized by s. 125.0104, Fla. Stat.).
[6] Section 125.0104(3)(g)-(k), Fla. Stat.
[7] See ss. 212.0305(4)(e), and 213.053(10)(a), Fla. Stat., relating respectively to sales and use taxes and state revenue laws.
[8] See Green v. State, 604 So. 2d 471, 473 (Fla. 1992);Plante v. Department of Business and Professional Regulation,685 So. 2d 886, 887 (Fla. 4th DCA 1996), WFTV,Inc. v. Wilken, 675 So. 2d 674 (Fla. 4th DCA 1996); State v.Cohen, 696 So. 2d 435 (Fla. 4th DCA 1997).
[9] Webster's New Universal Unabridged Dictionary p. 1891 (2003).
[10] Webster's Third New International Dictionary p. 2272 (unabridged ed. 1981).
[11] Black's Law Dictionary p. 338 (8th edition).
[12] Cf. Johnson v. Taggart, 92 So. 2d 606 (Fla. 1957).
[13] Id. at 608. And see Sarasota Herald-TribuneCo. v. Sarasota County,632 So. 2d 606, 607 (Fla. 2d DCA 1993).
[14] See s. 161.31(2), Fla. Stat., andsee s. 161.32, Fla. Stat., which authorizes existing erosion prevention, beach or shore preservation districts created by special act to re-create and reestablish themselves under the provisions of Part II, Ch. 161, Fla. Stat.
[15] See s. 2(3) and s. 5, Ch. 2000-399, Laws of Fla.
[16] Section 8, Ch. 2000-399, Laws of Fla.