[Civil No. 2952. Filed December 30, 1930.]

[294 Pac. 1106.]

D. B. BARLOW, Appellant, v. A. F. JONES, T. E. McCULLOGH and L. B. HART, as the Duly Appointed, Qualified and Acting Commissioners of the Arizona Game and Fish Commission, THE ARIZONA GAME AND FISH COMMISSION, and R. L. BAYLESS, as Arizona State Game and Fish Warden, Appellees.

Mr. J. C. Wilson, for Appellant.

Messrs. Holzworth, McNabb & Phillips, for Appellees.

ROSS, J.—The state game and fish warden issued to the appellant, D. B. Barlow, a class B license for the year 1930. A controversy arose between appellant and the warden as to whether such license authorized appellant to take only fish or both fish and small game. Instead of asserting his rights as he viewed them by inviting arrest, appellant brought this action against the appellees, the Arizona game and fish commission and the warden, under the provisions of the declaratory judgments statute (article 12, chap. 93, §§ 4385–4390, Rev. Code 1928), to have his rights determined by the courts. Judgment went against appellant, and he has brought the matter here for review. No question is made of the remedy.

Chapter 84, Laws of 1929, relating to the preservation of the state's game and fish, provides for an open season and a closed season, and the taking of game and fish in the open season by those persons holding licenses. Section 23 of said chapter classi-

fies the licenses, states what may be taken under each class, and fixes the fees to be paid therefor. That section reads as follows:

"Licenses shall be divided into classes and fees paid therefor as follows: Class A, resident general hunting and fishing license, two dollars and fifty cents; *class B, resident fishing license, one dollar and twenty-five cents;* class C, resident trapping license, three dollars and fifty cents; class D, non-resident general hunting and fishing license, thirty-five dollars; class E, non-resident fish and small game license, ten dollars; class F, non-resident special fishing license, two dollars and fifty cents, valid for fifteen days from date of issue; class G, non-resident trapping license, twenty-five dollars; class H, alien general hunting and fishing license, seventy-five dollars; class I, alien fish and small game license, thirty dollars; class J, special license, alien applicant for citizenship, for general hunting, twenty-five dollars; class K, special license, alien applicant for citizenship, fishing and small game, ten dollars. Classes A, D, H and J include all varieties of fish and game; *classes B, E, I, and K include all fish and small game;* classes C and G include all varieties of predatory and fur bearing animals; and class F includes all kinds of fish that may be taken under this act. . . . " (The two phrases directly involved we emphasize by italics.)

Appellant's license, as before stated, was a class B. It will be noticed that section 23 is divided into two sentences. The first sentence classifies and describes the licenses; the second sentence prescribes what may be taken by the licensee. Because in class B the license is described as "resident fishing license," it is claimed by the warden the licensee can take fish only, notwithstanding the legislature has said in the second sentence that the holder of a class B license may take "all fish and small game."

The classification is on the basis of the place of residence or citizenship of the licensee. Residents are charged less than nonresidents and aliens for the

same privilege. The purpose of the classification into A, B, C, etc., is one of convenience in fixing and collecting fees thereon. The rights conferred on the licensee are set forth in the second sentence of the section. The right or privilege conferred, and not the classification or description of the license, is the important and controlling thing. The omission in the classification and description of license B of one of the privileges or rights conferred on the licensee by the sentence following means nothing, except, perhaps, an oversight or inadvertence on the part of the legislature. Had the omission been in the declaration of rights, a very different question would be presented.

The appellees introduced the testimony of one of the members of the legislature which passed the law in controversy to the effect that it was intended to omit from the rights conferred on a class B licensee the right to take small game, but this testimony was clearly incompetent. If the intent of the legislature is to be shown by inquiring of the members what was intended, it would be necessary to interrogate all the members of both the Senate and the House. Besides being an interminable job, it is not conceivable that a common intent would be the result. The intent of the legislature can only be determined by the language used, aided by the canons and rules of construction founded upon reason and experience. A legislative enactment cannot be amended or changed either by the insertion or the elimination of words to conform with an intent proven by the testimony of the members of the enacting body. It can only be changed or modified by the legislature when regularly convened as provided by the Constitution.

As is said in 25 Ruling Case Law 963, section 218, the courts "cannot read into a statute something that is not within the manifest intention of the legislature as gathered from the statute itself. To depart from

the meaning expressed by the words is to alter the statute, to legislate and not to interpret. If the true construction will be followed with harsh consequences, it cannot influence the courts in administering the law. The responsibility for the justice or wisdom of legislation rests with the legislature, and it is the province of the courts to construe, not to make, the laws.''

Being satisfied that the appellant was entitled to take both fish and small game under the license issued to him, the judgment holding to the contrary should be reversed, and it is so ordered, with directions that further proceedings be had in accordance herewith.

LOCKWOOD, C. J., and McALISTER, J., concur.