[Civil No. 3583. Filed February 11, 1935.]

[40 Pac. (2d) 979.]

N. W. STEWART, Appellant, v. JACK M. ROBERTSON, SAM ENSMINGER, ANDREW P. MARTIN, H. A. TWINING, E. M. F. IVEY, C. C. NORRIS and L. EVANS, Jr., as Members of the State Board of Pharmacy of the State of Arizona, Appellees.

Mr. George M. Sterling, for Appellant.

Mr. Arthur T. La Prade, Attorney General, and Messrs. Moeur & Moeur, for Appellees.

LOCKWOOD, C. J.—This is an appeal by N. W. Stewart, hereinafter called plaintiff, from a judgment of the superior court of Maricopa county, in a case brought under the Declaratory Judgment Act (Laws 1927, chap. 10) for the purpose of determining the construction and validity of sections 2577 and 2577-B (as added by Laws 1929, chapter 57), being part of chapter 58, article 12, of the Revised Code of 1928, which article is commonly known as the Pharmacy Act. The defendants in said action are the different members of the state board of pharmacy, whom we shall hereinafter refer to as the board. The trial court held the two sections whose validity was questioned to be constitutional, and from said judgment this appeal is taken.

The case was determined upon an agreed statement of facts which we may briefly summarize as follows: Plaintiff is a registered pharmacist and owner and operator of a drug store in Phoenix, Arizona, known as Washington Pharmacy No. 1, while the defendants constitute the board of pharmacy of the state of Arizona. In April, 1934, plaintiff notified the board that he intended to commence the operation of another drug store at a different location in the city of Phoenix, that he intended to advertise it as a drug store, and did not intend to have a registered pharmacist in active and personal charge at all times of the new store; that in the operation of such new store he intended to maintain a prescription department for the purpose of compounding and filling prescriptions, and intended to sell all merchandise, drugs and medicines such as are commonly sold in a drug store; that the entire business would be handled by unregistered clerks who are not pharmacists, ex-

cept that plaintiff personally intended to fill all pre-·
scriptions taken to such store as he visited it from
time to time. Upon the receipt of this information,
the board notified plaintiff that, if he attempted to
operate such new store in the manner that he had
set forth, they would be obliged to proceed against
him criminally for the violation of sections 2577 and
2577–B, aforesaid, it being their duty under the stat-
utes to prosecute for violations of the Pharmacy Act.
All of the parties admitted that the conduct which
plaintiff indicated he intended to follow would be a
violation of the literal terms of the two sections, but
plaintiff contended that such sections, in so far as
they denied him permission to perform the various
acts above set forth, were unconstitutional and there-
fore void.

The question then before us is, Are sections 2577
and 2577–B, when properly construed, unconstitu-
tional in so far as they prohibit plaintiff from con-·
ducting a business in the manner above set forth.
These sections read as follows:

"§ 2577. *Registration of Pharmacists Required;*
*Pharmacy Defined.* It shall be unlawful for any
person to manufacture, compound, sell, or dispense
any drug, poison, medicine or chemical, or to dis-
pense or compound the prescription of a medical
practitioner, unless such person be a registered
pharmacist or a registered assistant pharmacist, ex-
cept as hereinafter provided. Every place for the
sale, dispensing or compounding of drugs, medicines
or chemicals, or for the dispensing of prescriptions
of medical practitioners, shall be in charge of a
registered pharmacist, or of a registered assistant
pharmacist during the temporary absence of the
registered pharmacist. By temporary absence is
meant only those unavoidable absences which may
occur during a day's work, and when the registered
pharmacist in charge shall be within immediate call,
ready and able to assume the direct supervision of
said pharmacy. No registered assistant shall con-

duct a pharmacy. Every store or shop where drugs, medicines or chemicals are dispensed or sold at retail, or displayed for sale at retail, or where prescriptions are compounded, which has upon it or in it as a sign, the words 'pharmacist,' 'pharmaceutical chemist,' 'apothecary,' 'druggist,' 'pharmacy,' 'drugstore,' 'drugs,' or any of these words, or the characteristic show-bottles or globes, either colored or filled with colored liquids, shall be deemed a 'pharmacy' within the meaning hereof.''

''§ 2577–B. No business, or department thereof, shall be designated or advertised by using the words drugs, drug store, drug shop, pharmacy, apothecary, dispensary, or drug department, or any combination of such titles or words or any title or description of like import unless such business or department thereof, shall be in active personal charge of a pharmacist duly registered and licensed by the State Board of Pharmacy in accordance with the laws of this state. This act shall not apply to a business or department thereof engaged exclusively in acting as a wholesaler or jobber. Any person or corporation violating the provisions of this act shall be guilty of a misdemeanor and shall be subject to a fine of not less than fifty dollars nor more than three hundred dollars, or to imprisonment for not less than thirty days nor more than ninety days, or to both such fine and imprisonment.''

It will be seen thereby that the sections in reality attempt to prohibit three things: (a) The manufacturing, compounding, selling or dispensing of any drug, poison, medicine or chemical; or (b) the maintaining of a place of business for the dispensing and compounding of drugs, medicines or chemicals, except under the direct supervision of a registered pharmacist; and (c) the advertising of any place of business by the use of the words ''drugs, drug store, drug shop, pharmacy, apothecary, dispensary, or drug department,'' or any similar language, except where the business conducted therein is in the personal charge of a registered pharmacist who is prac-

tically continuously at hand. It is the position of the board that these sections in all of their parts are a valid exercise of the police power of the state. It is the contention of plaintiff that they are not, for the reason that they grant special privileges to certain classes of the population, in violation of subdivision 13, section 19, article 4, of the Constitution of Arizona.

We have had before us in the case of *State v. Childs*, 32 Ariz. 222, 257 Pac. 366, 54 A. L. R. 736, a question as to the validity of certain portions of the Pharmacy Act, and, in determining the particular point at issue therein, had occasion to discuss the principles which apply to acts of that nature. It is, of course, true that for the preservation of the public health and safety the state may regulate and place proper restrictions upon the practice of pharmacy and may prescribe qualifications to be possessed by those engaged in it. It is equally true that in the exercise of the police power it may regulate the sale of drugs, medicines and poisons, wherever such regulations tend in any way to protect the public health or safety, but it is also true that, where a regulation of this type does not in the slightest degree tend to protect the public, but in reality grants a monopoly of a legitimate business to one class of persons, it cannot be sustained under the police power. *Louis K. Liggett Co. v. Baldrige*, 278 U. S. 105, 49 Sup. Ct. 57, 73 L. Ed. 204. It follows that a statute which allows one class of persons to engage in what is presumptively a legitimate business, while denying such right to others, when the denial is not based upon a principle which may reasonably promote the public health, welfare or safety, is unconstitutional, and, while every presumption is in favor of the validity of a statute, yet, when it clearly appears that on no reasonable theory could it contribute to the

public health or safety, it is the duty of the courts to so decree and set it aside as unconstitutional. In the Childs case, *supra,* the real question was whether anyone except a registered pharmacist might sell at retail what is commonly known as patent or proprietary remedies, and other drugs, chemicals or medicines in the original package of the manufacturer, from whom the vendor had purchased it at wholesale. In the case cited, we held that, whenever medicines of any nature were concerned which were compounded by the vendor, and for whose purity, character and use he was personally responsible under the law, it was obvious that the health and safety of the public would be protected by providing that only one trained for the purpose would be permitted to compound such remedies or guarantee their character and value, but that, when the remedies were not compounded by the vendor, and when he was expressly exempt from any responsibility for their character and purity, or the results which flowed from their use, it could not be said that the health or safety of the public was in any way contributed to by requiring such articles to be sold only by a registered pharmacist.

■■ The question arising in the present case is different in its form from that found in the Childs case, but the fundamental test to be applied thereto is the same: "Does the particular regulation tend in any reasonable manner to promote the public welfare and safety, or is its only effect to limit to certain privileged persons the right to engage in a business which another can carry on with as much safety to the public as they can?" With these principles before us, let us consider the sections whose constitutionality is questioned. In passing on the constitutionality of a statute, if there are two reasonable constructions of its meaning, one of which

would make it unconstitutional and the other constitutional, it is always the duty of the court to give it the latter interpretation. 6 R. C. L. 78, and note. We therefore consider first just what the real meaning and extent of the prohibitions of the statute are.

The first prohibition on its face limits the manufacturing, compounding, selling, or dispensing of any "drug, poison, medicine or chemical, or the dispensing or compounding of the prescription of a medical practitioner" to registered pharmacists. It will be observed that this prohibition applies, not only to the manufacturing and the compounding, but to the selling or dispensing of any of the prohibited articles. If we are to apply the common definition to each and all of the named articles, the consequences will indeed be serious. What is meant by "drugs, medicines, poisons and chemicals" as the words are used in the section? We give, unless otherwise stated, the definition found in Webster's New International Dictionary, a work which is authoritative in its own field. The word "drug" is therein defined as "any substance used as a medicine or in the composition of medicines for internal or external use." It therefore follows the same substance may be a drug under one set of circumstances and not under another; the test being whether it is sold as, or used for a medicine. To illustrate, hydrochloric acid, when prescribed by a physician for lack of acidity of the stomach, as is often done, is unquestionably a drug, but the very same substance when sold for use in the mechanical arts, in which it is necessary in great quantities, does not come within the meaning of the word "drug." A poison is "any agent which introduced into the animal organism produces a morbid, noxious or deadly effect." If we are to give the definition its literal meaning, then hundreds of substances used in the mechanical arts can only be

sold or dispensed by registered pharmacists. The word "medicine," on the other hand, is defined as "any substance or preparation used in treating disease." This definition applies only to substances used in a certain manner, and obviously when so used all substances should be handled only by those skilled in the treatment of disease. But it is notorious that almost every physical substance known to man has been used at one time or another in the treatment of disease. If we are to hold the definition in the statute applies to every substance which can be or has been at any time used for a medicine, no matter what its intended use at the time of the particular sale, there is practically no retail business which would not come within the section. The term "chemical," used as a noun, is defined as "a substance produced by a chemical process, or used for producing a chemical effect." Again, if this is to be given its literal meaning, the large majority of productive enterprises could only purchase the substances which they require in the various processes of manufacture through and from a registered pharmacist. We think it is obvious that the legislature did not intend to use the various words contained in the prohibition in their full or literal sense, but that they are all limited by the word "medicine," and that the prohibition therefore applies only to substances which fall within the various classifications given, when they are sold to be used for the purpose of treating disease. This follows from the common definition of the word "pharmacy," which is: "The art or practice of preparing and preserving drugs and of compounding and dispensing medicines according to prescriptions of physicians." We hold, therefore, that the legislature in sections 2577 and 2577–B of the Pharmacy Act was dealing with the manufacturing, compounding, selling and dispensing only of those substances named

therein which were intended to be used as medicines within the meaning of the definition of that word, above given, and did not intend to prohibit the selling or compounding of any such substances when they were not sold as, or bought to be used for, medicinal purposes. It is doubtless true that there are specific substances of such a dangerous nature that the legislature may absolutely prohibit their sale for any purpose, except by persons specially trained in the use of such substance, and under definite and limited circumstances, but in such case it must appear clearly that it was the intention of the legislature to so limit the sale of the particular article in question. The portion of the act which we are considering does not apply to articles of this nature. It therefore appears that the state has made it unlawful for anyone except a registered pharmacist or assistant pharmacist to sell or dispense, as well as to compound and manufacture, any "drug, poison, medicine or chemical," to be used for medicinal purposes. We are of the opinion that such a limitation, where the thing so sold is not in the original package of the manufacturer, is a legitimate and proper exercise of the police power in the interest of the public health, and that any person, except a registered pharmacist or assistant pharmacist, who sells or dispenses, as well as compounds, one of the prohibited substances for medicinal purposes, is liable to prosecution.

We consider next the second prohibition. This requires that in any place of business wherein such substances are sold there must at all times be present a registered pharmacist or assistant pharmacist who is in charge of the place of business. It is a common and notorious fact, of which this court can well take judicial notice, that in many, if not most, of the places of business where such substances are

sold, other articles of an entirely different character are dealt with, and in many of the cases by far the greater portion of the business carried on concerns articles not within the prohibited class. If we are to hold that the phrase "every place for the sale, dispensing or compounding of drugs, medicines or chemicals," etc., means, in substance, that every enterprise which has, as part of its business, the selling of the prohibited articles, must in its entirety be in charge of a registered pharmacist, the burden on the owner of the business would be great and the benefit to the public, so far as other articles are concerned, nil. It would mean that a large institution, which in reality required for its success a business executive as a manager, must be in charge of a pharmacist, who does not necessarily know anything about the general conduct of a business. Such an interpretation of the statute would furnish no protection to the public health with a maximum of monopoly for one class of employees. It is our duty to construe a statute so as to, if possible, give it a reasonable and constitutional meaning. We are of the opinion that, when we take into consideration the general principles upon which pharmacy acts alone can be sustained, and the meaning of the first part of section 2577 that the words "every place for the sale," etc., shall be in charge of a registered pharmacist, do not mean the entire building or store where such things are sold as a part of the business conducted in such place, but refer only to that portion of the business in which the sale, dispensing or compounding of the particular articles, above referred to, is carried on, and that, so far as articles which do not fall within the prohibited classes are concerned, they may be sold freely within such building or storeroom without the presence or supervision of registered pharmacists.

 The third prohibition refers to the advertisement of any business or department thereof as a "pharmacy," either by use of that word or others of similar well-known import, unless the business is in active personal charge of a duly registered pharmacist. Taken into consideration with what we have previously said, we think the reasonable construction of this is that, if any business conducts a pharmacy, as a part thereof, and advertises such fact in the manner referred to by the statute, then such part of the business as comes within the term "pharmacy" must be in active personal charge of a registered pharmacist, as provided by law, but that the remainder of the business, which does not attempt to sell, dispense or compound the prohibited substances, as defined in this opinion, need not be in charge of such a pharmacist. To sum the matter up in simple language, the statute means that the business of selling, dispensing, and compounding of substances for the purpose of being used medicinally must at all times be conducted only by a registered pharmacist or assistant pharmacist, but that, if any general enterprise combines such business with other types of business, it is only the pharmacy part thereof which is subject to the regulations set forth in the sections.

Applying the test to the agreed statement of facts, so long as in the general business which plaintiff intends to engage in no substances are compounded, sold or dispensed for medicinal purposes, except in the original packages of the manufacturers, it is not necessary that a registered pharmacist should be present, for, while no such sales are being made, the establishment is not engaged in the business of pharmacy. But, if any sales be made of any substance for medicinal purposes, except as above limited, the establishment is to that extent engaged in the business of pharmacy, and, if either the sale or com-

pounding be made by anyone but a registered pharmacist or his assistant, it is a violation of the sections under consideration.

We therefore hold that sections 2577 and 2577–B, as explained and interpreted herein, are constitutional. The judgment of the trial court is affirmed.

McALISTER and ROSS, JJ., concur.