464 P.2d 966

**GREYHOUND PARKS OF ARIZONA, INC., an Arizona corporation, Appellant,**

**v.**

**Frank S. WAITMAN, Chairman; John K. Goodman, Vice-Chairman; Donald Butler, Al. A. Marth, and Tom Finley, Commissioners of the Arizona Racing Commission, Appellees.**

**Turf Paradise, Inc., an Arizona corporation; and Arizona Downs, an Arizona corporation, Intervenors.**

**No. 9815.**

Supreme Court of Arizona, In Banc.

Feb. 6, 1970.

Lewis, Roca, Beauchamp & Linton, by John P. Frank, Phoenix, for appellant.

Gary K. Nelson, Atty. Gen., by T. M. Pierce, Asst. Atty. Gen., Phoenix, for appellees.

Jennings, Strouss, Salmon & Trask by Francis B. Campbell, Jr., and Rex E. Lee, Phoenix, for intervenor Turf Paradise, Inc.

Moore, Romley, Kaplan, Robbins & Green, by Elias M. Romley and Arthur E. Romley, Phoenix, for intervenor Arizona Downs.

HAIRE, Judge of the Court of Appeals.

The appellant, Greyhound Parks of Arizona, Inc., filed a complaint against the appellee State racing commissioners seeking a declaratory judgment construing A.R.S. Sec. 5–110, subsec. C and further requesting a writ of mandamus compelling the appellees to issue a certain amended racing permit to appellant. The intervenors, Turf Paradise, Inc. and Arizona Downs, whose horse racing interests conflict with the dog racing interests of appellant, were allowed to intervene in the trial court. The trial court entered judgment construing the statute contrary to the construction urged by appellant and denying the issuance of the writ of mandamus which would have compelled the granting of the amended racing permit. Appellant has appealed from this adverse judgment.

The primary question raised on this appeal relates to the proper construction to be placed upon a statute which regulates competition between daytime dog racing and certain daytime horse racing. Appellant contends that the area restriction placed upon daytime dog racing by the statute involved was intended to be only countywide so as to prevent competition between daytime dog racing and daytime horse racing on the same day in certain counties only, that is, in any county in which commercial horse racing had been conducted prior to January 1, 1968. On the other hand, the appellees and the intervenors contend that the area restriction was intended to be statewide so as to prevent daytime dog racing anywhere in the state on the same day that there is daytime horse racing of the required seniority [1] anywhere else in the state.

The pertinent portion of the statute involved, A.R.S. Sec. 5–110, subsec. C reads as follows:

"C. Racing shall be permissible in either daytime or nighttime, but there shall be no daytime dog racing on the same day that there is daytime horse racing in any county in which commercial horse racing has been conducted prior to January 1, 1968, and no nighttime horse racing on the same day that there is nighttime dog racing in the same county."

■ The statute on its face is ambiguous and arguably susceptible to the constructions urged by both parties. Since such is the case, this court is faced with the task of ascertaining which meaning the legislature intended when it enacted this statute. City of Tombstone v. Macia, 30 Ariz. 218, 245 P. 677, 46 A.L.R. 828 (1926); Larsen v. Arizona Brewing Co., 84 Ariz. 191, 325 P.2d 829 (1958); State v. Locks, 94 Ariz. 134, 382 P.2d 241 (1963). In view of the fact that no extrinsic evidence was introduced in the trial court which would in any way aid the court in determining the probable legislative intention, we must determine this intention from the language used in the statute, aided by the canons and rules of statutory construction. Automatic Registering Machine Co. v. Pima County, 36 Ariz. 367, 285 P. 1034 (1930); Barlow v. Jones, 37 Ariz. 396, 294 P. 1106 (1930); and Marquez v. Rapid Harvest Co., 89 Ariz. 62, 358 P.2d 168 (1960).

While the specific limits of the restrictions imposed by this statute may be uncertain, there can be no uncertainty

---

1. By "required seniority" we mean commercial horse racing which had been conducted prior to January 1, 1968.

regarding the overall purpose of the statute, that is, that its purpose was to place *time* and *area* restrictions on competition between dog racing and horse racing. As to the *time* restriction, there is likewise no uncertainty—whether the competition be between daytime dog racing and daytime horse racing, or between nighttime horse racing and nighttime dog racing, the time restriction only prohibits competition when these racing activities take place "on the same day". However, when we consider the *area* restriction, we do find some ambiguity. But even as to the area restriction there is no uncertainty involving nighttime racing competition, because it is quite definitely limited to competition "in the same county". The uncertainty relating to the *area* restriction exists only in relation to daytime racing competition and results from the legislature's use of the words "in any county in which commercial horse racing has been conducted prior to January 1, 1968," rather than the words "in the same county" as were used in the restriction on nighttime racing competition. In support of their contentions, the intervenors argue that the prepositional phrase "in any county" is an adjectival prepositional phrase which modifies the noun it follows, "horse racing". This argument lends support to the intervenors' contention and apparently is the position adopted by the trial court as evidenced by the transcript of the trial judge's remarks at the time judgment was entered. On the other hand, appellant urges that the phrase "in any county in which commercial horse racing has been conducted prior to January 1, 1968," answers the question "where?" and is thus an adverbial phrase modifying the verb "shall be" and therefore indicates where the restriction on daytime dog racing "shall be", that is, in any county in which commercial horse racing has been conducted prior to January 1, 1968. While

we are inclined to agree that the quoted prepositional phrase does answer the question "where?" and therefore is more correctly denominated as an adverbial phrase, we do not believe it necessary in this particular case to base our opinion on such technical, grammatical distinctions.

In construing an ambiguous provision in the statute, all parts and provisions must be considered and construed together, and a construction adopted which best harmonizes with the context in which the ambiguous provision occurs. State v. Miller, 100 Ariz. 288, 413 P.2d 757 (1966); Sorenson v. Six Companies, 53 Ariz. 83, 85 P.2d 980 (1939); Isley v. School District No. 2, 81 Ariz. 280, 305 P.2d 432 (1956); and Powers v. Isley, 66 Ariz. 94, 183 P.2d 880 (1947).

In this statute, the legislature definitely limits the restriction on nighttime competition to countywide application, and, when reading the statute as a whole, the more reasonable interpretation is that the area of restriction on daytime racing was also intended to be on a countywide basis. If the intent had been to restrict daytime dog racing on a statewide basis, it would have been very easy to so provide by the insertion of the words "in this state" after the words "daytime dog racing". Further, if we ascribe to the legislature an intent to exclude daytime dog racing on a statewide basis, why were the words "in any county" used? There was no reason to refer to counties unless the legislature intended by such reference to define the area of competition.[2] To accomplish a statewide area restriction, a proper drafting would not refer to counties, but rather would read "* * * but there shall be no daytime dog racing on the same day that there is commercial horse racing which has been conducted prior to January 1, 1968,". It is more logical to assume that by inserting the words "in

2. That the words "in any county" were not used in the sense of "in all counties" is evidenced by the additional modifying language, which limits the language "in any county" to those counties in which commercial horse racing had been conducted prior to January 1, 1968.

any county", the legislature evidenced an intention that the area of restriction on daytime racing competition was to be the same as the area of restriction on nighttime racing competition, subject to the further limitation that in those counties in which commercial horse racing was not conducted prior to January 1, 1968, there was to be no statutorily imposed restriction whatsoever.

Appellant advances an additional argument as to why the interpretation urged by the intervenors should not be adopted. This contention is that such an interpretation would result in an arbitrary and unreasonable classification and an unwarranted interference with the rights of citizens guaranteed by the equal protection clause of the fourteenth amendment of the United States Constitution and by Art. 2, Sec. 13, and Art. 4, Part 2, Sec. 19, of the Constitution of the State of Arizona, A.R.S. Where different interpretations of an ambiguous provision in the statute are possible, a construction should be adopted which avoids constitutional doubts. Stewart v. Robertson, 45 Ariz. 143, 40 P.2d 979 (1935); City of Phoenix v. Superior Court, 101 Ariz. 265, 419 P.2d 49 (1966); and Employment Security Commission of Arizona v. Fish, 92 Ariz. 140, 375 P.2d 20 (1962). The interpretation which we adopt avoids this constitutional question.

In arriving at our conclusions we have not ignored the arguments raised by the appellee or by the intervenors concerning legislative intent. While the ascertainment of the legislative intent is always the cardinal principle to be applied in construing statutory provisions, that intent must be garnered from the language of the statute itself, or from pertinent evidence which is legally competent and admissible under recognized standards and canons of construction developed by the legislature and by the courts. Automatic Registering Machine

Co. v. Pima County, *supra;* Barlow v. Jones, *supra;* and Marquez v. Rapid Harvest Co., *supra.* Applying this rule, the court has not considered the broad statements as to legislative intent contained in the appellees' brief which are not supported by arguments based upon the language of the statute or by pertinent evidence presented to the trial court. Further, we obviously do not agree with the intervenors' contentions that because the words "in any county" were used in one place in the statute and the words "in the same county" were used in another, there is no ambiguity. As previously stated herein we agree that a different meaning was obviously intended, and the construction we adopt recognizes this difference. We do not believe, nor does the appellant contend, that the words "in any county" in and of themselves are ambiguous. The ambiguity arises from the sentence construction as a whole, and for the reasons which we have previously discussed, we believe that the interpretation urged by appellant is the more reasonable.

Because of the trial court's interpretation of the above discussed statutory provision, it did not consider an additional question raised by the intervenors relating to a different provision of this same statute. As previously quoted herein, A. R.S. Sec. 5–110, subsec. C commences with the language "Racing shall be permissible in either daytime or nighttime. * * *" The intervenors [3] contend that this language does not permit racing to be conducted both in the daytime and in the nighttime at the same track and still be counted as one racing day. This contention is material because, if the additional fifteen matinee (daytime) programs sought by appellant are to be considered as additional racing days, the maximum number of racing days allowed by statute would be exceeded. The intervenors first state that the language "in either daytime or nighttime * * *" logically implies that rac-

---

3. The appellee racing commissioners did not join in nor urge this argument either in the trial court or on this appeal.

ing may not be conducted both in the daytime and in the nighttime. A review of the cases and the authorities reveals that the words "either * * * or" are sometimes used in a context which relates to mutually exclusive alternatives, while in other instances these words include a connotation of "both" and relate to alternatives that are equally applicable and not mutually exclusive. Massey v. City of Franklin, 384 S.W.2d 505 (Ky.1964); Dallas Railway & Terminal Co. v. Allen, 43 S.W.2d 165 (Tex.Civ.App.1931); Kibler v. Parker, 191 Ark. 475, 86 S.W.2d 925 (1935). Webster's Third New International Dictionary recognizes these two different uses and states that the word "either" is "* * * used as a function word before two or more coordinate words, phrases or clauses joined usually by 'or' to indicate that what immediately follows is the first of two or more alternatives *that are equally applicable* * * * *or mutually exclusive.*" (Emphasis supplied).

It will be noted that the disputed language "Racing shall be permissible in either daytime or nighttime * * *." does not refer to either horse racing or dog racing specifically, but rather uses the all-inclusive term "racing". Following the disputed language are statutory restrictions which specifically set forth restrictions relating to when horse racing and dog racing may be conducted in the daytime and when these racing activities may be conducted in the nighttime. From this context we believe that it is clear that the legislature intended to use the words "either * * * or" in the inclusive sense of "both" and did not intend to set forth mutually exclusive alternatives. However, in support of their contention, the intervenors have advanced a legislative history argument that warrants comment. When House Bill 112, Laws of Arizona 1949, was first introduced, it had no provision which specifically authorized daytime or nighttime racing. After passage

by the House, the Senate amended House Bill 112 so that Sec. 8(e) thereof provided as follows:

"(e). For the purpose of this Act a meeting may consist of a number of continuous days of racing or of one or more days of racing per week over a period of months. *Racing shall be permissible in either the daytime or nighttime and the conduct of one or more racing meetings on the same day shall constitute one racing day.* The application for a permit shall state the exact days on which racing will be held." (Amendment language emphasized).

As finally enacted the words "and the conduct of one or more racing meetings on the same day shall constitute one racing day" were stricken from the proposed Senate amendment so that the final provision, as enacted in 1949 [4] read as follows:

"(e). For the purpose of this Act a meeting may consist of a number of continuous days of racing or of one or more days of racing per week over a period of months. *Racing shall be permissible in either the daytime or nighttime.* The application for a permit shall state the exact days on which racing will be held." (Emphasis supplied).

The essence of intervenors' argument is that by striking a portion of the language from the proposed Senate amendment, the legislature "unmistakably determined that racing during the day and during the night of the same day shall constitute two racing days." It is important to note that the stricken language did not state that a program of both daytime and nighttime racing at the same track in a single racing meeting would constitute one racing day. Rather, it speaks in the plural of racing meetings and states in broad general terms that the conduct of one or more racing meetings on the same day shall constitute one racing day. It appears to us that the stricken language was susceptible to the interpretation that because they were held on the same day, different racing

4. This statute has been the subject of numerous amendments since 1949.

*meetings* at different tracks would constitute but one racing day. We believe that this interpretation would be contrary to the intent of the legislature as expressed in other provisions of the statute. Therefore we do not believe that the conclusions drawn by the intervenors from the stricken language are necessarily valid, and that the foregoing illustrates a more probable reason why the language was stricken.

In reviewing Chapter 61, Laws of 1949, a very logical reason for the insertion of the words "Racing shall be permissible in either the daytime or nighttime" appears. The disputed language follows a provision which states that "For the purpose of this act a meeting may consist of a number of continuous *days* of racing or of one or more *days* of racing per week over a period of months." (Emphasis supplied). Further, the authorization for racing permits in the 1949 act refers to so many "days" of horse, harness and dog racing. When construed in this context we think the more logical explanation is that the permissive language relating to daytime or nighttime racing was inserted by the legislature to negate any inference raised by other language in the statute that racing meets could be conducted during the *day* only.

■ We therefore hold that A.R.S. Sec. 5–110, subsec. C does not prohibit racing in both the daytime and the nighttime at the same track, nor does it require that if such dual performances do occur, they be counted as two racing days. This construction is consistent with the interpretation which has been placed upon the statute by the appellee racing commissioners during the many years since the original enactment of the statute.

For the reasons set forth herein, the declaratory portion of the trial court's judgment must be reversed. As previously stated, appellant also sought in the trial court a writ of mandamus requiring the appellees to issue a permit to appellant for certain racing dates occurring in 1969.

We have not discussed in this opinion appellant's right to the remedy of mandamus for the reason that because of the passage of time, the mandamus issue has become moot.

STRUCKMEYER, V. C. J., and McFARLAND, J., concur.

JESSE A. UDALL, J., having requested that he be relieved of consideration in connection with this opinion, The Honorable LEVI RAY HAIRE, Judge of the Court of Appeals was called to sit in his stead.

LOCKWOOD, Chief Justice (specially concurring):

Rules of statutory construction are merely guideposts for determining an ultimate result—the intent of the legislative body, when the language of the statute is not entirely clear.

In reading A.R.S. Sec. 5–110, subsec. C, it appears to me that the interpretation by the appellees and the intervenors is correct as a matter of syntax. Nevertheless, there is some logic to the argument of appellant that had the legislature intended to restrict daytime dog racing more severely than nighttime dog racing, it could have made the statute more specific by declaring that there should be no daytime dog racing within the State at any time that daytime horse racing has been conducted within the State prior to January 1, 1968.

The court is presented with a question of determining the difference between Tweedledum and Tweedledee. However, if the intent of the legislature was opposite to the intent declared in this decision, there is no doubt the legislature can take such action as may be necessary to change the situation.

Therefore I am willing to concur in the opinion.

HAYS, J., joins in the above specially concurring opinion.